**Diedre WILLIAMS, et al., Plaintiffs,**

v.

**NEW YORK CITY HOUSING AUTHORITY, et al., Defendants.**

**No. 81 Civ. 1801(RJW).**

United States District Court, S.D. New York.

Aug. 27, 1997.

The Legal Aid Society Civil Appeals & Law Reform Unit, New York City, Helaine Barnett, Attorney–in–Charge, Scott A. Rosenberg, Director of Litigation, South Brooklyn Legal Services, New York City, Raun Rasmussen, Director of Litigation, for Plaintiffs.

New York City Housing Authority, New York City, Jeffrey Schanback, General Counsel, Raphael Samuel, Associate General Counsel, for Defendant New York City Housing Authority.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs Diedre Williams ("Williams"), *et al.*, have filed an application, pursuant to 42 U.S.C. § 1988, for attorney's fees in the amount of $543,183.50. For the reasons hereinafter stated, plaintiffs are awarded $383,457.37 in attorney's fees.

## BACKGROUND

Under the Section 8 program, 42 U.S.C. § 1437f, defendant New York City Housing Authority ("NYCHA") provides rental subsidies to landlords on behalf of indigent tenants. On March 26, 1981, plaintiff Williams brought this action for injunctive relief to challenge on procedural due process grounds NYCHA's methods of terminating Section 8 assistance. Williams contested NYCHA's termination of Section 8 payments to landlords without prior notice to tenants or a pre-termination hearing. In addition, she contested the fact that, because NYCHA was not a party to eviction proceedings brought against tenants in Housing Court for non-payment of NYCHA's share of rent, tenants were unable to litigate the validity of NYCHA's termination of assistance. Over a period of two years, several other plaintiffs intervened in the proceedings, and on August 10, 1983, the Court granted plaintiffs' motion for class certification.

The action was resolved through two partial consent judgments. The First Partial Consent Judgment, signed on October 17, 1984, established procedures by which Section 8 tenants may challenge a NYCHA decision to discontinue or terminate subsidy payments. In the Second Partial Consent Judgment, signed on February 2, 1995, the parties agreed to certification and objection procedures that protect tenants in eviction proceedings where non-payment of rent is related to a termination of Section 8 benefits.

Plaintiffs now request an award of attorney's fees in the amount of $543,183.50 for sixteen years of work performed by the Legal Aid Society ("Legal Aid") and South Brooklyn Legal Services ("Legal Services"). NYCHA argues that the award sought is excessive for several reasons, and that plaintiffs are entitled only to fees in the amount of $163,480.20.

## DISCUSSION

Title 42 U.S.C. § 1988 provides in pertinent part that the court in its discretion may allow a prevailing party in § 1983 actions to recover reasonable attorney's fees. The statutory language of § 1988 creates a presumption in favor of fee awards, and prevailing parties are entitled to recover fees and costs unless there are special circumstances which would render such an award unjust. *See Wilder v. Bernstein,* 725 F.Supp. 1324, 1329–30 (S.D.N.Y.1989), *aff'd in part and remanded,* 965 F.2d 1196 (2d Cir.), *cert. denied,* 506 U.S. 954, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992).

For fee award purposes, plaintiffs are prevailing parties if they have "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Plaintiffs must show that "actual relief on the merits of [their] claims materially alters the legal relationship between the parties by modifying the defendant[s'] behavior in a way that directly benefits the plaintiff[s]." *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). The fact that plaintiffs prevail through a consent judgment or without formally obtaining relief does not weaken their

claim for fees. *See Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980). Nor must the relief ultimately obtained be identical to the relief demanded in the complaint, provided the relief obtained is of the same general type. *See Koster v. Perales,* 903 F.2d 131, 134–35 (2d Cir.1990).

Having determined that plaintiffs are prevailing parties, the court must calculate what constitutes a reasonable fee. *See Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). In order to reach an initial estimate of reasonable fees, the court applies the lodestar approach. *See id.* "Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys." *Id.*

In the instant case, NYCHA does not dispute that § 1988 applies to this litigation, or that plaintiffs are prevailing parties for the purposes of the fee application. NYCHA does, however, argue that plaintiffs have not demonstrated the reasonableness of their proposed hourly rates; that plaintiffs achieved only limited success; and that the number of hours plaintiffs claim to be compensable by NYCHA should be reduced. As a result, NYCHA contends, the Court should award a significantly lower fee than that requested.

## I. *Plaintiffs' Success*

While there is a strong presumption that the lodestar figure represents the reasonable fee, the court's determination does not end with this calculation. *See Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). Instead, upon a showing by the party contesting the lodestar figure that plaintiffs' success was limited, the lodestar figure can be adjusted downward. *See id.; see also Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494, (1992) (stating that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained)

To determine whether plaintiffs' partial success requires a reduction in the lodestar, the court first examines whether plaintiffs "failed to succeed on any claims wholly unrelated to the claims on which plaintiff[s] succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation." *Grant,* 973 F.2d at 101 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983)). Next, the court considers whether there are any unsuccessful claims interrelated with the successful claims. If there are such unsuccessful claims, the court then "determines whether plaintiff[s'] level of success warrants a reduction in the fee award." *Id.* (citing *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). Attorneys should recover fully compensatory fees, however, where plaintiffs have obtained excellent results. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940–41. Ultimately, the determination of whether plaintiffs' success is limited lies within the discretion of the court. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Grant,* 973 F.2d at 101.

■ Here, because all of plaintiffs' claims were based on a common core of facts, there were no unrelated claims for which plaintiffs' attorney's hours should be excluded. NYCHA claims that plaintiffs' success was nonetheless limited—under the second step of the analysis described above—because the consent judgments do not reflect plaintiffs' success on all of their original claims. Specifically, NYCHA contends that the First Partial Consent Judgment provided plaintiffs with little beyond what they would have obtained by operation of law under the March 1984 Final Rule issued by the United States Department of Housing and Urban Development ("HUD"). Further, NYCHA contends that the relief plaintiffs obtained in the Second Partial Consent Judgment, which mandates only a limited degree of NYCHA involvement in the Section E eviction process, is far less than the relief plaintiffs originally sought.

While the relief afforded by the consent judgments is not identical to that originally sought in this action, the Court is not per-

suaded that the results achieved by plaintiffs fall within the meaning of limited success. First, the First Partial Consent Judgment affords Section 8 tenants a pre-reduction conference, a hearing in court before any eviction can occur, and an expedited administrative hearing. These procedures, while not identical to the formal administrative hearing procedures requested in plaintiffs' complaint, assure tenants of an opportunity for pre-reduction review by NYCHA, a formal hearing in court to contest any subsidy reduction, and an expedited administrative hearing with a decision rendered within thirty days. Moreover, contrary to NYCHA's contention, these procedures are more protective than the HUD regulations embodied in the 1984 Final Rule. For these reasons, the relief afforded plaintiffs in the First Partial Consent Judgment fully vindicates their due process claim, and no reduction in the fee award is warranted.

Similarly, in accordance with plaintiffs' claims, the Second Partial Consent Judgment provides for notice and an opportunity to be heard before Section 8 tenants can be evicted. While plaintiffs' request that NYCHA be required to give prior authorization for proposed eviction proceedings was not included, the Second Partial Consent Judgment provides for a certification and objection procedure equivalent to an authorization requirement. Under this procedure, NY-CHA must object to commencement of an eviction proceeding when the case involves a dispute between NYCHA and the tenant or landlord. Once NYCHA makes such an objection, Section 8 landlords, who have been certified as a class, are required to join NYCHA as a party to the eviction proceeding. If it fails to make a timely objection, NYCHA must move to intervene in the eviction proceeding, or, if judgment has been entered against a tenant, move to vacate the judgment. The certification and objection procedure, although different from the authorization requirement originally requested by plaintiffs, substantially vindicates plaintiffs' claim that due process requires protections for Section 8 tenants faced with eviction proceedings.

Both consent judgments afford the plaintiff class almost all of the relief sought in the original complaint. While the relief provided differs in some respects from that originally requested, plaintiffs nonetheless succeeded in achieving due process protections equivalent to those originally envisioned. Accordingly, the Court will not adjust the lodestar downward to reflect limited success.

## II. Rates

### A. Hourly Rates •

Using the lodestar approach, plaintiffs seek fees in the following amounts:

| Name | Hours | | Rate | | Total |
|---|---|---|---|---|---|
| **Legal Aid** | | | | | |
| Scott Rosenberg | 429.48 | × | $300 | = | $128,844.00 |
| John Gorman | 36.70 | × | $300 | = | $ 11,010.00 |
| James C. Francis IV | 239.87 | × | $250 | = | $ 59,967.50 |
| David Mitchell | 470.17 | × | $250 | = | $117,542.50 |
| | | | | | |
| * Paralegal tasks by attorneys | 17.01 | × | $ 75 | = | 1,275.75 |
| Subtotal | | | | | $318,639.75 |
| | | | | | |
| **Legal Services** | | | | | |
| Russell Engler | 414.25 | × | $300 | = | $124,275.00 |
| Raun Rasmussen | 59.25 | × | $300 | = | $ 17,775.00 |
| Roger Maldonado | 255.00 | × | $250 | = | $ 63,750.00 |
| Elaine Fink | 26.00 | × | $175 | = | $ 4,550.00 |
| Leslie Salzman | 34.75 | × | $150 | = | $ 5,212.50 |
| Jennifer Small | 116.25 | × | $ 75 | = | $ 8,718.75 |

| Name | Hours | | Rate | | Total |
|---|---|---|---|---|---|
| * Paralegal tasks by attorneys | 3.50 | × | $ 75 | = | $ 262.50 |
| Subtotal | | | | | $224,543.75 |
| TOTAL | | | | | $543,183.50 |

■ Under § 1988, plaintiffs are entitled to reasonable hourly rates which fall within the prevailing marketplace rates "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). Even where fees are awarded to non-profit organizations, as is the case here, prevailing marketplace rates are fully applicable. *Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir.1987). The relevant community for a fee determination is the judicial district in which the trial court sits, in this case, the Southern District of New York. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987). In addition to looking at prevailing marketplace rates, the Court may rely on its own knowledge of comparable rates charged by other lawyers in the district. *Ramirez v. New York City Off–Track Betting Corp.,* No. 93 Civ. 0682, 1997 WL 160369, at *2 (S.D.N.Y. Apr.3, 1997).

■ Plaintiffs argue that both recent decisions awarding attorneys fees and recent surveys of New York City law firm billing rates support their requested hourly rates. Further, plaintiffs claim that such rates are commensurate with the experience of their counsel, who have worked extensively on class action litigations. NYCHA contends that the rates sought by plaintiffs are excessive. According to NYCHA, historic rates rather than current rates should be applied to account for the passage of time involved in this litigation. Additionally, NYCHA argues that the hourly rates should not be determined according to each attorney's level of experience at the end of the litigation, but rather, should take into account the actual level of experience of each attorney at the time the work was performed.

In this Circuit, the practice had been to apply the historic rate, or, in the case of protracted litigation, to divide the litigation into two periods, applying the current rate to the recent phase and the historic rate to the earlier phase. *See New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1153 (2d Cir.1983). In *Missouri v. Jenkins,* however, the Supreme Court stated that it is within the discretion of the district court to make "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise." 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). In the instant case, which involves a sixteen-year litigation, this Court thus "has the latitude to depart from the two-phase approach and may calculate all hours at whatever rate is necessary to compensate counsel for delay." *Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). Accordingly, current rather than historic rates will be applied to determine plaintiffs' counsel's hourly rates.

Nevertheless, the Court is persuaded that plaintiffs' attorneys should not be compensated according to their current level of experience. Instead, their hourly rates should reflect the passage of time and the corresponding development of each attorney's expertise. For example, while Mr. Rosenberg has had over fourteen years of experience as a civil rights litigator and currently serves as lead supervising attorney, he began working on the instant case as a staff attorney in 1984, only two years after graduating from law school in 1982. His contribution to this case thus was not always that of a seasoned litigator. The same is true for Mr. Francis and Mr. Mitchell, both of whom graduated from law school in 1978 and worked on this case from 1981 to 1985; Mr. Engler, who graduated from law school in 1983 and worked on this case from 1984 to 1988 as a staff attorney and from 1988 to 1993 as a

supervising attorney; Mr. Rasmussen, who graduated from law school in 1984 and worked on this case from 1993 to 1997; and Mr. Maldonado, who graduated from law school in 1981 and worked on this case from 1983 to 1988.

Accordingly, rather than assign hourly rates based on each attorney's current level of experience, the Court will determine hourly rates based on the average of each attorney's level of experience throughout the course of the litigation. Specifically, Mr. Rosenberg and Mr. Rasmussen will be compensated at the prevailing market rate for ninth- and tenth-year lawyers, or junior partners, and Mr. Francis, Mr. Mitchell, Mr. Engler, and Mr. Maldonado will be compensated at the prevailing market rate for fifth- and sixth-year lawyers, or senior associates. As Mr. Gorman, Ms. Fink, Ms. Salzman, and Ms. Stern each worked on this case for only one year, they will be compensated at the prevailing market rate for a tenth-year lawyer, or junior partner, a third-year lawyer, or mid-level associate, a second-year lawyer, or junior associate, and a student intern, respectively.

▮ Based on a review of the rates applied in recent fee award decisions in this district, and the Court's knowledge of the rates charged by other counsel in this district in comparable litigation, the following hourly rates are reasonable in this action: $250 for junior partners; $200 for senior associates; $150 for mid-level associates; $135 for junior associates; and $75 for student interns. *See, e.g., Ciner Mfg. Co. v. S.M. Gold Fashion Mfg. Corp.,* No. 94 Civ. 3831, 1997 WL 193330, at * 3 (S.D.N.Y. Apr.21, 1997) ($300 for experienced partner and a range of $175 to $190 for an associate); *Fine v. Interpublic Group of Cos., Inc.,* No. 94 Civ. 4419, 1997 WL 7583, at *6 (S.D.N.Y. Jan.9, 1997) ($300 for lead counsel and $150 for second-year associate); *Nembhard v. Memorial Sloan–Kettering Cancer Ctr.,* 918 F.Supp. 784, 791 (S.D.N.Y.), *aff'd,* 104 F.3d 353 (2d Cir.1996) ($300 for litigator with ten years experience);

*New York State Nat'l Org. for Women v. Cuomo,* No. 93 Civ. 7146, 1996 WL 689404, at * 3 (S.D.N.Y. Nov.26, 1996) ($315, $295, and $195); *Helbrans v. Coombe,* 890 F.Supp. 227, 234 (S.D.N.Y.1995) ($250 for junior partners, $225 for senior associates, $175 for mid-level associates, $125 for junior associates, and $75 for paralegals[1]); *Loper v. New York City Police Dep't,* 853 F.Supp. 716, 719 (S.D.N.Y. 1994) ($250 to attorney with seven years experience); *Monaghan v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 85 (S.D.N.Y.1994) (fee range of $250 to $300 for experienced partners, $120 to $180 for associates); *Wahad v. Coughlin,* 870 F.Supp. 506, 507 (S.D.N.Y. 1994) (experienced partners $300 to $350 and third-year associate $150); *Davis v. City of New Rochelle, N.Y.,* 156 F.R.D. 549, 558–59 (S.D.N.Y.1994) ($300 for partner, $75 for student intern); *Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510 (S.D.N.Y.1994) ($275 and $300 for lead counsel); *Ortiz v. Regan,* 777 F.Supp. 1185 (S.D.N.Y.1991), *aff'd,* 980 F.2d 138 (2d Cir.1992) ($250); *Wilder v. Bernstein,* 725 F.Supp. 1324 (S.D.N.Y. 1989), *aff'd in part and remanded,* 965 F.2d 1196 (2d Cir.), *cert. denied,* 506 U.S. 954, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992) ($200 to $250 for work performed in 1987–89); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904 (S.D.N.Y.1988), *aff'd,* 890 F.2d 569 (2d Cir.1989) ($150 for less experienced attorneys)

Accordingly, plaintiffs' attorney's fees will be calculated based upon the following hourly rates:

| Attorney | Hourly Rate |
| --- | --- |
| **Legal Aid** | |
| Scott Rosenberg | $250 |
| John Gorman | $250 |
| James C. Francis IV | $200 |
| David Mitchell | $200 |
| | |
| **Legal Services** | |
| Raun Rasmussen | $250 |
| Russell Engler | $200 |
| Roger Maldonado | $200 |
| Elaine Fink | $150 |
| Leslie Salzman | $135 |

---

1. The time of a law student is compensable in an award of attorney fees at the same rate as a paralegal. *See United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990); *Luciano v. Olsten Corp.,* 925 F.Supp. 956, 963 (E.D.N.Y.1996).

| Jennifer Small | $ 75 |
|---|---|

### B. *Rates for Travel Time*

■ Plaintiffs seek reimbursement for time spent travelling to and from various meetings, conferences, and court appearances at fifty percent of their proposed hourly rates. As NYCHA agrees that travel time should be discounted by fifty percent, and as courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates, plaintiffs will be reimbursed for travel time at fifty percent of the determined hourly rates. *See, e.g., Jennette v. City of New York,* 800 F.Supp. 1165, 1170 (S.D.N.Y.1992); *Davis v. City of New Rochelle, N.Y.,* 156 F.R.D. 549, 559 (S.D.N.Y. 1994); *Loper v. New York City Police Dep't,* 853 F.Supp. 716, 720 (S.D.N.Y.).

### C. *Rates for Paralegal–Level Work*

With regard to all hours that might be regarded as more properly performed by paralegals than attorneys, plaintiffs have proposed a rate of $75. NYCHA contends that these hours are compensable only at the rate that would apply to "summer intern" work. Paralegal and law clerk billing rates ranging from $70 to $85 per hour are acknowledged to be well within reason. *Davis v. City of New Rochelle, N.Y.* 156 F.R.D. 549, 559 (S.D.N.Y.1994); *Loper v. New York City Police Dep't,* 853 F.Supp. 716, 720 (S.D.N.Y. 1994); *see also Missouri v. Jenkins,* 491 U.S. 274, 286–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989) (holding paralegals and law clerks may be billed separately at market rates pursuant to local market practice) Because plaintiffs' proposed rate is at the lower end of the acceptable range, the Court accepts $75 as the rate at which plaintiffs' attorneys will be reimbursed for paralegal tasks.

### D. *Rates for Clerical Work*

■ NYCHA contends that reimbursement for clerical or secretarial services is impermissible. Such services are part of overhead expenses and are not generally charged to clients. *Westchester Legal Servs., Inc. v. County of Westchester,* No. 85 Civ. 3115, 1987 WL 6160, at *5 (S.D.N.Y. Jan.27, 1987). The lodestar will be reduced to reflect the fact that reimbursement for such services is improper.

### III. *Number of Hours Compensable by NYCHA*

■ The Court must exclude from the lodestar calculation hours that were not "reasonably expended." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). As the Supreme Court noted,

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Id.* (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)). NYCHA disputes the number of hours plaintiffs spent: working on landlord-related issues; engaging in intra-organizational activities; drafting certain court papers; and relearning the case. In addition, NYCHA seeks a reduction of compensable hours based on: overstaffing; clustered, cryptic, and incomplete time entries; and the absence of original, contemporaneous time records.

### A. *Landlord–Related Issues*

NYCHA argues that it should not be required to compensate plaintiffs for counsel's: (1) appearances at Housing Court proceedings between individual plaintiffs and individual landlord defendants; (2) research regarding the potential liability of the landlord defendant class; and (3) work generated by the action or inaction of individual landlord defendants. According to NYCHA, because plaintiffs waived recovery of § 1988 fees against the landlord defendants, and because plaintiffs' fee records identify with clarity work done solely on landlord-related issues, apportionment of fees is appropriate. This Court agrees that apportionment is the more

equitable resolution here, where to decide otherwise would permit plaintiffs to waive fees against the landlord defendants and then hold NYCHA liable for those very same fees. *See Koster v. Perales,* 903 F.2d 131, 139 (2d Cir.1990). Therefore, the lodestar will be reduced to reflect that fact that compensation for approximately thirty-four hours spent by plaintiffs' attorneys on landlord-related issues is inappropriate.

### B. *Intra–Organizational Activities*

According to NYCHA, reimbursement should be disallowed for fifty hours that plaintiffs' counsel spent on work "excessive or tangential to the progress of the litigation." Specifically, NYCHA points to time spent on: reports to supervisors and staff attorneys on the case status and the progress of settlement negotiations; requests made of supervisors for approval of settlement terms; presentations to housing specialists in the legal services community regarding proposed settlement terms; preparation of file memoranda; and communications with HUD officials, the media, political officials, and other public interest lawyers regarding the settlement agreements in this action. NYCHA refers to these activities as institutional obligations beyond the scope of services required by and expended on the litigation.

Several courts in this district have reimbursed attorneys for intra-firm meetings, and "courts generally grant attorney's fees for inter-firm conferences in class action lawsuits." *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 267–68 (S.D.N.Y.1995) (citing *In Re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296, 1320 (E.D.N.Y.1985) *aff'd in part, rev'd in part on other grounds,* 818 F.2d 226 (2d Cir.1987)). A review of the relevant time records does not show that plaintiffs' attorneys spent an excessive amount of time on such conferences, or that such conferences were not " 'the least expensive method of facilitating necessary communications between attorneys' ". *Bowne,* 161 F.R.D. at 268 (quoting *In Re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. at 1350). Similarly, the Court is not persuaded that the practices of reporting to and obtaining approval from superiors, con-

sulting with experts, and preparing file memoranda are internal obligations unique to Legal Aid and Legal Services. Indeed, these practices are similar if not identical to those of private law firms.

Nor does it appear from the relevant time records that counsel engaged in the type of publicity activities for which courts have denied fees. *See Westchester Legal Servs., Inc. v. County of Westchester,* No. 85 Civ. 3115, 1987 WL 6160, at *4 (S.D.N.Y. Jan.27, 1987). First, HUD was involved in this case as early as August 1983, when NYCHA alleged that it had information that HUD opposed the 1982 moratorium entered into by the parties. Given HUD's role in this litigation, it would be unfair to disallow time spent on communications with that agency. Additionally, NYCHA points to no instances where plaintiffs' counsel initiated press campaigns with the media. The Court therefore does not agree that the communications to which NYCHA refers fall into the category of excludable publicity activities. The fee award will not be reduced for time spent on intra-organizational activities.

### C. *Excessive Hours*

The Court can disallow fee requests for hours that are "excessive, redundant, or otherwise unnecessary." *General Elec. Co. v. Compagnie Euralair, S.A.,* No. 96 Civ. 0884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1982)). NYCHA contends that plaintiffs' counsel spent an excessive amount of time on: researching and drafting the intervention brief for Denise Harris; preparing the class certification motion; preparing the Ilene Solomon Intervenor Complaint and related documents; opposing NYCHA's motion for relief from the interim stipulation; opposing NYCHA's motion to permit a termination proceeding against Steven Ritter; preparing a response to NYCHA's "Rule 3(g)" statement; and preparing a fairness declaration and brief regarding the first version of the Second Partial Consent Judgment. According to NYCHA, counsel's time on these tasks should be reduced by fifty percent.

NYCHA does not, however, explain why the hours expended by plaintiffs' counsel on these tasks is excessive. Moreover, each task that NYCHA has identified for reduction involves the research and writing of complex court documents, all of which were integral to the litigation. Given the absence of a reasoned explanation for a fee reduction, and the significance and complexity of the work at issue, the Court cannot find that plaintiffs' counsel spent excessive hours on the tasks identified by NYCHA. A reduction in the fee award thus is not warranted on this ground.

### D. Relearning the Case

■ According to NYCHA, numerous hours represent time spent "relearning" this matter. NYCHA first argues that the hours billed by Ms. Small, a summer intern at Legal Services, should be disallowed because they represent time spent learning rather than working. A law student's time is compensable in an award of attorney fees at the same rate as a paralegal. *See United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990); *Luciano v. Olsten Corp.*, 925 F.Supp. 956, 963 (E.D.N.Y.1996). While it is true that one of the goals of a summer intern is to continue her education, it is clear from the time records that Ms. Small contributed to the work product of this litigation. Accordingly, the Court will allow compensation for Ms. Small's work at the determined hourly rate of $75 per hour. *See Jones v. Kreisel Co.*, No. 90 Civ. 7412, 1995 WL 681095, at *3–4 (S.D.N.Y. Nov.16, 1995).

NYCHA also seeks a reduction in compensation for hours spent by Ms. Fink and Ms. Salzman reviewing and editing Ms. Small's work. While such work may be characterized as "pedagogical," it is not unreasonable for more experienced attorneys to delegate research and drafting responsibilities to more junior employees and then to review and edit their work. The Court will, however, reduce the lodestar to reflect the fact that Ms. Fink and Ms. Salzman spent some of their time reviewing and editing their intern's work.

Next, NYCHA seeks to disallow hours billed by Mr. Mitchell, Mr. Francis, and Mr. Maldonado that represent "refamiliarization with the case following gaps in litigation activity." Time spent on background research in order to become familiar with the particular aspects of a case is " 'substantive legal work deserving of an award of attorney's fees.' " *Westchester Legal Servs., Inc. v. County of Westchester*, No. 85 Civ. 3115, 1987 WL 6160, at *5 (S.D.N.Y. Jan.27, 1987) (quoting *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296, 1375 (E.D.N.Y.1985) *aff'd in part, rev'd in part on other grounds*, 818 F.2d 226 (2d Cir.1987)). Given that the work at issue here is refamiliarization with the case, the Court in its discretion will reduce the lodestar accordingly.

Finally, NYCHA argues that numerous hours billed by Mr. Rosenberg, Mr. Engler, and Mr. Rasmussen would not have been required but for personnel changes at Legal Aid and Legal Services, and thus are not compensable. Given the fact that this litigation has extended over sixteen years, it seems reasonable that various attorneys joined and left plaintiffs' litigation team. The Court does, however, agree that NYCHA alone should not bear the burden of duplicative work resulting from plaintiffs' counsel staff changes. *See Malarkey v. Texaco, Inc.*, 794 F.Supp. 1237, 1247 (S.D.N.Y. 1992), *aff'd*, 983 F.2d 1204 (2d Cir.1993). For this reason, the hours billed as a result of changes in staff will be compensable, but the lodestar will be reduced to reflect the duplication.

### E. Overstaffing

■ The use of more than one attorney is reasonable in complex class-action litigation where "each attorney made a distinct contribution by his presence or participation." *Williamsburg Fair Hous. Comm. v. Ross–Rodney Housing Corp.*, 599 F.Supp. 509, 518 (S.D.N.Y.1984). Moreover, prevailing parties are not barred as a matter of law from receiving fees for the assistance of a second attorney during the course of discovery or court proceedings. *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983). It is, howev-

er, proper to reduce a fee request when two or more attorneys have duplicated each other's work, since some of the work was unnecessary and the time claimed thus was unreasonable. *See Wilder v. Bernstein,* 725 F.Supp. 1324, 1337 (S.D.N.Y.1989), *aff'd in part and remanded,* 965 F.2d 1196 (2d Cir.), *cert. denied,* 506 U.S. 954, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992); *Williamsburg Fair Hous. Comm.,* 599 F.Supp. at 518.

In support of their fee application, plaintiffs argue that, given the duration and complexity of this case, the staffing patterns reflect a reasonable, efficient division of responsibility. Plaintiffs note that for most of the litigation period, they seek compensation for only two attorneys working at any one time. In order to ensure that all duplication of effort has been eliminated, plaintiffs explain that in the exercise of billing judgment they have foregone compensation for the work of two attorneys.

NYCHA nonetheless contends that plaintiffs seek full compensation for significantly overstaffed litigation activities. In these instances, NYCHA argues, the hours recorded for attorneys who cannot be identified as primary actors should be reduced by fifty percent. As an example, NYCHA refers to plaintiffs' request for full compensation for the thirty-seven hours spent by five attorneys preparing for and conducting one four-hour deposition.

The Court agrees that, for the most part, plaintiffs' staffing patterns and exercise of billing judgment are reasonable. It does, however, appear that there are specific hours for which compensation is sought that reflect duplicative work. The lodestar therefore will be reduced to reflect the fact that plaintiffs seek compensation for the duplicative work of additional attorneys.

F. *Accuracy of Time Entries*

NYCHA contends that numerous entries submitted in support of the instant application fail to provide reasonably accurate descriptions of the subject work. As a result, NYCHA continues, the Court should disallow the hours claimed for each inaccurate entry. In order to recover attorney's fees, the prevailing party must submit time records specifying, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Although time records need not contain great detail and specificity, attorneys should identify the general subject matter of their work. *Hensley v. Eckerhart,* 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 1941 n. 12, 76 L.Ed.2d 40 (1983). If "the time records submitted in support of a fee application lack sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed, the Court is justified in reducing the hours claimed for those entries." *Mautner v. Hirsch,* 831 F.Supp. 1058, 1077 (S.D.N.Y. 1993), *aff'd in part, rev'd in part,* 32 F.3d 37 (2d. Cir.1994) (citations omitted); *see also Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 520, (S.D.N.Y.1994) (reducing lodestar by thirty percent due in part to vague time entries such as "telephone call to S. Berger," "review Macklowe files," and "conference with T. Holzman").

Certain descriptions in plaintiffs' attorneys' time sheets, for example, "discuss w/george," "call w/samuel," and "ltr to plaintiff," are vague and inadequate in that they fail to identify the topic discussed or the subject matter of the drafted document.

NYCHA further contends that plaintiffs' counsel's time sheets include entries that cluster together various activities without describing the time devoted to each activity. According to NYCHA, such time charges should be reduced by thirty percent. Fee applicants should not

"lump" several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided.... "It is not the court's job to decipher time entries and guess how much time each activity took.... It is the responsibility of the applicant to make separate time entries for each activity."

*In re Poseidon Pools of America, Inc.,* 180 B.R. 718, 731 (Bankr.E.D.N.Y.1995) (citations omitted).

Given that the Court is reimbursing travel time at fifty percent, and paralegal tasks at $75 per hour, entries that include travel to and attendance at meetings or court conferences, and entries that include both lawyer tasks and paralegal tasks are troublesome. Because vague and clustered entries appear in plaintiffs' counsel's time sheets, the lodestar will be reduced.

### G. *Original, Contemporaneous Time Records*

 The time records submitted in support of an attorney's application for fees must be made contemporaneously with the associated work. *Luciano v. Olsten Corp.*, 925 F.Supp. 956, 963 (E.D.N.Y.1996). It is, however, sufficient for the applicant to submit a computerized reconstruction of its contemporaneous records. *Id.* The failure to keep contemporaneous time records can re-sult in a reduction in the fee award. *See Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 84 (S.D.N.Y.1994).

NYCHA argues that there are forty instances in which plaintiffs' attorneys' original time records do not support the claimed work. As a result, NYCHA asks the Court to disallow these individual entries. While NYCHA makes clear which time entries are in dispute, it provides no evidence to demonstrate how or why these entries inaccurately depict the work performed by plaintiffs' attorneys. The Court will not disallow compensation based on NYCHA's conclusory allegations. Because plaintiffs have produced contemporaneous time records, the reduction requested by NYCHA is not warranted.

The following is a summary of the number of hours and the hourly rates at which plaintiffs' counsel will be compensated:

| Name | Hours | | Rate | | Total |
|------|------|---|------|---|-------|
| **Legal Aid** | | | | | |
| Scott Rosenberg | 429.48 | × | $250 | = | $107,370.00 |
| John Gorman | 36.70 | × | $250 | = | $ 9,175.00 |
| James C. Francis IV | 239.87 | × | $200 | = | $ 47,974.00 |
| David Mitchell | 470.17 | × | $200 | = | $ 94,034.00 |
| * Paralegal tasks by attorneys | 17.01 | × | $ 75 | = | 1,275.75 |
| Subtotal | | | | | $259,828.75 |
| **Legal Services** | | | | | |
| Raun Rasmussen | 59.25 | × | $250 | = | $ 14,812.50 |
| Russel Engler | 414.25 | × | $200 | = | $ 82,850.00 |
| Roger Maldonado | 255.00 | × | $200 | = | $ 51,000.00 |
| Elaine Fink | 26.00 | × | $150 | = | $ 3,900.00 |
| Leslie Salzman | 34.75 | × | $135 | = | $ 4,691.25 |
| Jennifer Small | 116.25 | × | $ 75 | = | $ 8,718.75 |
| * Paralegal tasks by attorneys | 3.50 | × | $ 75 | = | $ 262.50 |
| Subtotal | | | | | $166,235.00 |
| TOTAL | | | | | $426,063.75 |

In accordance with the discussion above, the lodestar figure of $426,063.75 will be reduced by ten percent to $383,457.37.

### CONCLUSION

For the foregoing reasons, plaintiffs' application pursuant to 42 U.S.C. § 1988 is grant-ed. Plaintiffs are awarded attorney's fees in the amount of $383,457.37.

It is so ordered.