Fahey, J.
(dissenting). I respectfully dissent. A consent judgment is a contract between parties. A three-step termination procedure for Section 8 benefits was established to resolve Williams v New York City Hous. Auth. (US Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984). The majority opinion effectively creates a one-step procedure for terminating Section 8 benefits. The result is that the protections agreed to in Williams are meaningless.
Indeed, in my view, the consent judgment by which Williams was resolved must be read such that a determination to terminate Section 8 benefits is made only upon the proper mailing of all three of the notices demanded by that judgment. Consequently, in Matter of Banos v Rhea I would conclude that the statute of limitations was not triggered, and I would thus affirm the order of the Appellate Division and answer the certified question in the affirmative. In Matter of Dial v Rhea, I would reach the same conclusion with respect to the statute of limitations but, because respondent John Rhea [1] should have been permitted to answer the petition, I would modify the Appellate Division’s order by vacating the part of the judgment of Supreme Court granting the petition and remitting to that court for further proceedings, and otherwise affirm.
L
“Under the Section 8 program, 42 U.S.C. § 1437f, [NYCHA] provides rental subsidies to landlords on behalf of indigent ten *282 ants” (Williams v New York City Hous. Auth., 975 F Supp 317, 319 [SD NY 1997]). In March 1981, plaintiff Diedre Williams commenced an action seeking
“injunctive relief to challenge on procedural due process grounds NYCHA’s methods of terminating Section 8 assistance. Williams contested NYCHA’s termination of Section 8 payments to landlords without prior notice to tenants or a pre-termination hearing. In addition, she contested the fact that, because NYCHA was not a party to eviction proceedings brought against tenants in Housing Court for non-payment of NYCHA’s share of rent, tenants were unable to litigate the validity of NYCHA’s termination of assistance. Over a period of two years, several other plaintiffs intervened in the proceedings, and on August 10, 1983, the [United States District Court for the Southern District of New York] granted [the] plaintiffs’ motion for class certification” (id.).
Williams was eventually resolved through two partial consent judgments, the first of which (generally, consent judgment) is germane to both of the appeals now before us.[2] The circumstances of these cases require the full recitation of the relevant parts of the consent judgment:
“1. Termination of the subsidy or eligibility of any participant in the Section 8 Housing Assistance Program . . . administered by [NYCHA] . . . shall be made only after a determination in accordance with the procedures and provisions herein. . . .
“3. After [a] preliminary determination [to terminate a Section 8 subsidy or eligibility therefor] is made, [NYCHA] shall take the following steps:
“(a) a warning letter in Spanish and English will be sent to the participant, by regular mail, specifically stating the basis for the proposed adverse action; and, where appropriate, seeking the participant’s compliance;
*283 “(b) thereafter, if the conditions which led to the preliminary determination have not been remedied within a reasonable period of time after the mailing of the warning letter, a notice in Spanish and English shall be sent to the participant by certified mail with a copy by regular mail; the notice shall state the proposed adverse action and specific grounds for [NYCHA’s] complaint with enough specificity for the participant to prepare a defense. It shall inform the participant that he or she may request a hearing [with NYCHA] by responding to the notice, in writing, within [20] days after mailing; the notice shall include information about the optional pre-hearing conference . . . that is available to the participant; said notice shall include a copy of the procedure herein, shall be sent in duplicate, and will contain a section where the participant may fill in his or her response; with instructions that the participant return one copy with his or her written response. . . .
“(e) In the event that the participant does not respond to the notice as provided for in [paragraph] 3(b) . . . , a Notice of Default, in Spanish and English, shall be mailed to the participant. . . . Said Notice of Default shall have the same force and effect as a determination after a hearing to terminate the subsidy, and procedures for vacating such default shall be those set forth in paragraph ‘22’ of this procedure. . . .
“22. A determination to terminate a participant’s subsidy or eligibility shall be implemented, as follows:
“(a) a Notice in Spanish and English, shall be sent to the participant by regular and certified mail setting forth [NYCHA’s] determination and including ... an explanation of the right to seek judicial review and of the procedure for reopening a default
“(f) for the purposes of Section 217 and Article 78 of the [CPLR], the determination to terminate a subsidy shall, in all cases, become final and binding upon receipt of the . . . Notice of Default, pursuant to paragraph ‘3(e)’....
*284 “(g) For the purposes of this paragraph, there is a rebuttable presumption of receipt of the . . . notices referred to herein on the fifth day following the date of mailing.”
The warning letter referred to in paragraph 3 (a) of the consent judgment has no pseudonym. The notice of termination letter referred to in paragraph 3 (b) of that judgment, however, is known as a T-l letter, while the notice of default letter referred to in paragraph 3 (e) therein is known as a T-3 letter (see Matter of Fair v Finkel, 284 AD2d 126, 127-128 [1st Dept 2001]).
IL

Matter of Banos v Rhea

In February 2012, Banos commenced a proceeding pursuant to CPLR article 78 against NYCHA and her landlord, respondent Coney Island Towers, LLC, challenging NYCHA’s termination of her Section 8 benefits. There Banos alleged that NY-CHA failed to comply with the consent judgment before terminating the subsidy inasmuch as she did not receive from NYCHA any of the three letters demanded by paragraph 3 of that judgment, i.e., she was not provided with a warning letter, a T-l letter, or a T-3 letter. In lieu of answering, NYCHA “cross-moved” for an order dismissing the petition as time-barred (see CPLR 3211 [a] [5]), contending that Banos failed to commence the proceeding within four months of NYCHA’s final and binding determination to terminate her Section 8 benefits (see CPLR 217 [1]). NYCHA specifically alleged that, pursuant to paragraph 22 (f) of the consent judgment, the determination to terminate Section 8 benefits became final and binding upon Banos’s receipt of a T-3 letter, and that it had established Ba-nos’s presumptive receipt of that letter in May 2010.
Supreme Court denied the cross motion and granted NYCHA 60 days in which to answer the petition, reasoning that NY-CHA breached the consent judgment inasmuch as it failed to send Banos a warning letter and a T-l letter and thus did not trigger the applicable statute of limitations. On appeal, with one Justice dissenting, the Appellate Division affirmed, ruling that because “NYCHA did not comply with the notice provisions set forth in the . . . consent judgment,” i.e., because NY-CHA did not send to Banos all three of the notices demanded by that judgment, “the statute of limitations was not properly *285 triggered and did not begin to run” (111 AD3d 707, 708 [2d Dept 2013]). The Appellate Division subsequently granted NY-CHA leave to appeal and certified the question whether its order was properly made (2014 NY Slip Op 67900 [U] [2d Dept 2014]).

Matter of Dial v Rhea

In May 2011, Dial commenced a proceeding pursuant to CPLR article 78 against NYCHA and her landlord, respondent 690 Gates, LP. Similar to Banos, Dial alleged that NYCHA failed to comply with the consent judgment inasmuch as she did not receive from NYCHA any of the three letters prescribed in that judgment before her Section 8 benefits were terminated in October 2007. Again in lieu of answering, NYCHA “cross-moved” for an order dismissing the petition as time-barred (see CPLR 217 [1]; 3211 [a] [5]). NYCHA specifically contended that, pursuant to paragraph 22 (f) of the consent judgment, the determination to terminate Section 8 benefits became final and binding upon Dial’s receipt of a T-3 letter. In the same vein, NYCHA maintained that it had established Dial’s presumptive receipt of that letter in August 2007.
For its part, 690 Gates opposed the cross motion, contending that NYCHA failed to establish that the T-3 letter had been properly mailed to Dial. More importantly to our analysis, 690 Gates also contended that, to the extent the cross motion was denied, NYCHA should not be afforded additional time to answer the petition. According to 690 Gates, in the absence of evidence that NYCHA had complied with the notice requirements of the consent judgment, the court would be constrained to grant the petition, and an answer would be futile. Supreme Court agreed with Dial and 690 Gates inasmuch as it, inter alia, granted the petition without affording NYCHA the opportunity to answer and directed the payment of any rent subsidy for Dial that was not issued because of the cessation of her Section 8 benefits.
On appeal, the Appellate Division affirmed, this time unanimously. In this order, the Appellate Division more fully probed the background common to this appeal and Banos before concluding that, “[a]s a result of [NYCHA’s] failure to abide by the notice provisions set forth in the . . . consent judgment, the statute of limitations was not properly triggered and did not begin to run” (111 AD3d 720, 723 [2d Dept 2013]). The Appellate Division subsequently granted NYCHA leave to *286 appeal and certified the question whether its order was properly made (2014 NY Slip Op 70575[U] [2d Dept 2014]).
III.
CPLR “[a]rticle 78 proceedings are subject to a four-month statute of limitations, running from the time when ‘the determination to be reviewed becomes final and binding’ ” (People v Liden, 19 NY3d 271, 275-276 [2012], quoting CPLR 217 [1]; see Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007]). In Banos, there can be no dispute that, to the extent the T-3 letter presumptively received in May 2010 is deemed a final determination for the purpose of triggering the statute of limitations, the petition, which was filed in February 2012, would be time-barred. The same is true in Dial; there, the T-3 letter was presumptively received in August 2007, and the petition was filed in May 2011. Consequently, our review distills to the question whether the consent judgment renders final a determination to terminate based on the mailing of only a T-3 letter or whether, under the terms of that judgment, a determination to terminate is final only when all three of the warning, T-l, and T-3 letters have been mailed. Cast another way, the primary issue herein is whether mailing of only the T-3 letter, rather than each of the three notices NYCHA previously agreed to provide in the consent judgment, triggered the statute of limitations in each of these CPLR article 78 proceedings.
Turning now to the rules that guide our analysis, it is settled that “[c]onsent decrees, while . . . judicial decrees subject to enforcement by the court, nonetheless are agreements between parties to litigation that ‘should be construed basically as contracts’ ” (United States v International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 998 F2d 1101, 1106 [2d Cir 1993], quoting United States v ITT Continental Baking Co., 420 US 223, 236-237 [1975]). Put differently, “[a] consent decree is in the nature of a contract, which we must interpret in light of its plain language” (Callahan v Carey, 12 NY3d 496, 502 [2009] [internal quotation marks and citation omitted]). “Under New York law, written agreements are construed in accordance with the parties’ intent and ‘[t]he best evidence of what parties to a written agreement intend is what they say in their writing’ ” (Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]).
*287 Indeed,
“ ‘[w]hen parties set down their [agreement] in a clear, complete document, their writing should . . . be enforced according to its terms’ (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004], quoting W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases (see South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005], citing Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003]). Courts ‘may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing’ (Vermont Teddy Bear, 1 NY3d at 475, quoting Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001])” (Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]).
Importantly, too, courts should “aim [for] a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations” (Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555 [1982] [internal quotation marks omitted]).
Based on those principles, I conclude that the statute of limitations was not triggered in either of the instant proceedings. As noted, the consent judgment arose from Williams (US Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984), which, in turn, arose from a challenge to NYCHA’s methods of terminating Section 8 assistance (see Williams, 975 F Supp at 319). As also noted, the consent judgment, inter alia, sets forth an agreed-upon series of steps NYCHA must take after making a preliminary determination to discontinue benefits under the Section 8 program. Pursuant to paragraph 3 (a), NYCHA must send a warning letter to the participant by regular mail. If the conditions that led to the preliminary determination are not remedied following the warning letter, paragraph 3 (b) provides that NYCHA must then mail a second letter containing a more specific notice of termination, i.e., a T-l letter. Assuming those letters are mailed, and assuming there is no response to such correspondence, pursuant to paragraph 3 (e), NYCHA then must send a third letter, i.e., a T-3 letter, therein notifying the participant *288 of the default. In such cases, paragraph 22 (f) provides that “the determination to terminate a subsidy shall . . . become final and binding upon receipt of the [T-3 letter].”
The majority and NYCHA seize upon paragraph 22 (f) in concluding that the mailing of the T-3 letter, even in the absence of the mailing of warning and T-l letters, triggers the statute of limitations in proceedings such as these. I disagree. To read paragraph 22 (f) in such isolation unduly emphasizes a single part of the consent judgment (cf. Consedine, 12 NY3d at 293) and results in an impractical interpretation of that agreement (cf. Sutton, 55 NY2d at 555) that eviscerates its obvious ameliorative purpose of standardizing the termination of Section 8 benefits through a trinity of notices. In my view, taking the position that the mailing of a T-3 letter alone is sufficient to trigger the statute of limitations does not simply limit the combined condition precedent to termination created by the consent judgment’s unified mailing requirement, but destroys it. Indeed, the consent judgment, although far from precisely worded, more than once refers to the process by which the written warning and explication of the termination of Section 8 benefits is to be accomplished as a single “procedure” (see consent judgment para 3 [b], [e]; cf. para 1). The nature of that reference strongly suggests that the three notices now at issue are part of one unit and are effective only when given in combination with one another. NYCHA’s failure to provide the series of notices required by the consent judgment to form a termination of Section 8 benefits made the determinations to terminate petitioners’ benefits neither effective nor final. The statute of limitations was not triggered in either of these proceedings.
Implicit in this analysis is the rejection of NYCHA’s alternative contention that the statute of limitations began to run when each petitioner knew or should have known of its decision to terminate her Section 8 subsidy, irrespective of whether petitioners were properly notified of the cessation of those benefits. In my view that contention is merely a backdoor way of arguing that, because petitioners received or presumably received the respective T-3 notices approximately IV2 years (Banos) and approximately 3V2 years (Dial) before these proceedings were commenced, each such proceeding is time-barred. To adopt that approach would burden frequently elderly and unsophisticated Section 8 beneficiaries with interpreting the T-3 notice — a tack that is simply contrary to the notice and mailing procedure of the consent judgment.
*289 NYCHA’s additional alternative contention in Dial with respect to laches is likewise meritless. “ ‘The essential element of [that] equitable defense is delay prejudicial to the opposing party’ ” (Capruso v Village of Kings Point, 23 NY3d 631, 641 [2014], quoting Matter of Schulz v State of New York, 81 NY2d 336, 348 [1993]), but here NYCHA should have immediately known of the threat of litigation flowing from its breach of the protocol for terminating Section 8 benefits to which it agreed in the consent judgment.
IV.
Finally, with respect to Dial, I agree with NYCHA that it should have been permitted to answer the petition following the denial of its cross motion to dismiss. CPLR 7804 (f) provides, in relevant part, that “[i]f [a] motion [to dismiss] is denied, the court shall permit the respondent to answer, upon such terms as may be just.” This Court has recognized an exception to that mandate where “the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer” (Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102 [1984]), but that exemption does not apply in this case. Here the record reflects that NYCHA sought dismissal of the petition on the grounds that it is barred by the statute of limitations and by the doctrine of laches, while at the same time reserving its right to answer to the extent the court denied the cross motion. Inasmuch as NY-CHA contended that the statute of limitations with respect to this proceeding was triggered by the mailing of the T-3 letter to petitioner, the evidence submitted in support of the cross motion naturally was focused on the T-3 notice. Moreover, although NYCHA could conceivably have addressed the issue of the mailing of the warning and T-l letters on reply, there was no reason for it to do so given its core contention that the T-3 letter alone is an independent trigger for the statute of limitations. Consequently, NYCHA should have been permitted to answer the petition in Dial and to contest, inter alia, the question whether it owes retroactive rent subsidies to Dial.
Accordingly, in Matter of Banos v Rhea I would affirm the order of the Appellate Division and answer the certified question in the affirmative. In Matter of Dial v Rhea, I would modify the order of the Appellate Division by vacating the part of Supreme *290 Court’s judgment granting the petition and remitting to that court for further proceedings.
In Matter of Banos v Rhea: Order reversed, without costs, motion to dismiss petition as time-barred granted, and certified question answered in the negative.
Opinion by Judge Stein. Judges Read, Pigott and AbdusSalaam concur; Judge Fahey dissents in an opinion in which Chief Judge Lippman and Judge Rivera concur.
In Matter of Dial v Rhea: Order reversed, without costs, motion to dismiss petition as time-barred granted, and certified question not answered as unnecessary.
Opinion by Judge Stein. Judges Read, Pigott and AbdusSalaam concur; Judge Fahey dissents in an opinion in which Chief Judge Lippman and Judge Rivera concur.

. Rhea was sued in both proceedings in his capacity as Chairman of NY-CHA. Similar to the tack taken by the majority, and for ease of review, from this point forward both Rhea and NYCHA will be referred to as NYCHA.

. Thus far, the background facts have been taken from an opinion of the District Court awarding the plaintiffs in Williams attorney’s fees pursuant to 42 USC § 1988 following the resolution of that action through, inter alia, the consent judgment (see Williams, 975 F Supp at 319).