**MR. X, Plaintiff,**

v.

**NEW YORK STATE EDUCATION DEPARTMENT, New York City Board of Education, and Community School District 2 in the City of New York, Defendants.**

**No. 96 Civ. 7059 (CBM).**

United States District Court,
S.D. New York.

Sept. 4, 1998.

Tenzer Greenblatt LLP, by Edward L. Sadowsky, for plaintiff Mr. X.

New York State Office of the Attorney General, by BethAnn Gannon, for defendant New York State Education Department.

New York City Office of the Corporation Counsel, by Kathleen Handke, for defendants New York City Board of Education and Community School District 2 in the City of New York.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. Background

On September 16, 1996, plaintiff ("Mr. X") commenced this action on behalf of his son ("E"), alleging that E had been deprived of a free and appropriate education ("FAPE") which he is entitled to under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. After plaintiff applied to defendant Community School District 2 ("School District") for educational services for E, the School District's Committee on Pre–School Special Education ("CPSE") developed an Individualized Education Plan ("IEP") for E, which plaintiff rejected. Pursuant to the IDEA, plaintiff demanded an impartial hearing on the IEP. The Impartial Hearing Officer determined that the CPSE had recommended a FAPE as required by law. Plaintiff appealed the decision to the State Review Officer, who dismissed the appeal. This action, in which plaintiff challenged these decisions, followed.

On September 4, 1997, this court granted plaintiff's motion for summary judgment. The court found that, in violation of the IDEA, the IEP prepared by the CPSE did not provide plaintiff's son with a FAPE that would render some educational benefit to him.

On November 13, 1997, a hearing on damages was held before the court. As a result of that hearing, the court directed the clerk of court to enter judgment for plaintiffs for $88,000 as reimbursement.[1]

On July 22, 1998, a hearing on attorney's fees and costs was held before the court. Plaintiff claims that he is entitled to $178,-657.75 in attorney's fees, plus $4,749.03 in costs. The New York State Education Department ("State defendant") argues that plaintiff is entitled to a maximum of $69,-465.10 in attorney's fees, plus $2,049.42 in costs. The New York City Board of Education and Community School District 2 in the City of New York ("City defendants") argue that plaintiff is entitled to a maximum

of $55,304.19 in attorney's fees, plus $1,500.59 in costs.

For the reasons set forth below, the court finds that plaintiff's application for attorney's fees is granted in the amount of $142,926.20. The court finds that plaintiff's application for costs is granted in the amount of $3,799.22.

### II. Findings of Fact and Conclusions of Law

Pursuant to the IDEA, plaintiff, as prevailing party, may be awarded attorney's fees. See 20 U.S.C. § 1415(i)(3)(B).

◼ Although the amount of attorney's fees awarded is "largely within the discretion of the district court," the Second Circuit has established a procedure to calculate such awards. Under the "lodestar" approach to determining attorney's fees, fees are determined by "multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." The lodestar figure may be adjusted upward or downward "to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation." *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496 (2d Cir.1980).

### A. The Rate Charged by Plaintiff's Attorneys is Reasonable

◼ Plaintiff's attorneys have submitted documentation indicating that they have spent a total of 615 hours on this case over the course of two and one-half years. The plaintiff's lead attorney, Edward L. Sadowsky ("Sadowsky"), submitted documentation indicating that he had personally spent 378 hours (of the total 615 hours) on this case. Sadowsky's billing rate was between $350 and $375 per hour throughout the two and one-half year period during which he worked on this case.

The City defendants and the State defendant argue that the rate charged by Sadowsky is excessive and unreasonable. However, the court notes that these are the same rates which Sadowsky charged all of his oth-

---

1. There was no dispute as to the issue of reimbursement in the amount of $88,000.

er clients during this same time period. As defendants concede,[2] the law does not support their contention that attorneys handling IDEA cases should be compensated at a lower rate than that which they normally command in other cases. Rather, attorneys may be compensated at the prevailing rate in the community for attorneys of similar skill and experience. *See* 20 U.S.C. § 1415(i)(3)(C). *See also Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Other courts in this district have approved rates similar to the ones charged by Sadowsky for attorneys of exceptional skill and experience. *See Nembhard v. Memorial Sloan–Kettering Cancer Center*, 918 F.Supp. 784, 791 (S.D.N.Y.1996); *Helbrans v. Coombe*, 890 F.Supp. 227, 234 (S.D.N.Y. 1995).

The court finds that Sadowsky is a very experienced litigator. He has been practicing law for 45 years, and has successfully litigated numerous cases in a broad range of subjects.[3] Although Sadowsky does not specialize in IDEA law, his extensive background and experience litigating a variety of cases undoubtedly helped him learn about the IDEA quickly and effectively. Furthermore, Sadowsky's work in this case resulted in a positive change in the way in which autistic children are educated in New York City public schools. *See* Transcript of Hearing on Damages, July 22, 1998, pg. 13. Thus, the court finds that Sadowsky should be compensated for his work on this case at the rate of $350 to $375 per hour.

## B. Duplicative and Vague Time Entries

■ The court finds that some of the time entries recorded by plaintiff's counsel are duplicative and excessive. For example, both Sadowsky and Fredda L. Plesser ("Plesser"), an associate on the case, attended hearings on November 16, 1995, January 5, 1996, and November 14, 1996, when the presence of both attorneys was not necessary. The court may refuse to grant fee

requests for time entries that are excessive or redundant. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Williams v. New York City Housing Authority*, 975 F.Supp. 317, 325 (S.D.N.Y. 1997).

In addition, Plesser bills her travel time at the same rate at which she bills substantive legal work. However, courts in this circuit generally reimburse attorneys for travel time at 50% of their hourly rates. *See Williams v. New York City Housing Authority*, 975 F.Supp. 317, 324 (S.D.N.Y.1997).

■ Furthermore, some of plaintiff's time entries are too vague for this court to determine whether or not the amount of time spent on particular tasks was reasonable. Time records should enable the court to determine the nature of the tasks performed and the amount of time reasonably required to perform those tasks. Vague or incomplete time entries justify a reduction in the amount of attorney's fees awarded. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983).

Therefore, to account for these vague and duplicative time entries, the court reduces the amount requested by plaintiffs by 20%. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (noting that various courts "have endorsed percentage cuts as a practical means of trimming fat from a fee application"). Thus, the court finds and concludes that plaintiff's application for attorneys' fees is granted in the sum of $142,926.20.

Similarly, to account for vague and incomplete entries, the court also reduces plaintiff's application for costs by 20%. Thus, the court finds and concludes that plaintiff's application for costs is granted in the amount of $3,799.22.

---

**2.** *See* Transcript of Hearing on Damages, July 22, 1998, pg. 6.

**3.** *See, e.g., Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir.1985); *In re United Merchants and Manufacturers, Inc.*, 623 F.2d 804 (2d Cir.1980); *Jhirad v. Ferrandina*, 486 F.2d 442

(2d Cir.1973); *Hafner v. Forest Laboratories, Inc.*, 345 F.2d 167 (2d Cir.1965); *Kaplan v. Shapiro*, 655 F.Supp. 336 (S.D.N.Y.1987); *United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F.Supp. 609 (S.D.N.Y.1978).

## C. Allocation of Fees between the State Defendant and the City Defendants

 The court finds and concludes that the State defendant and the City defendants must equally bear the burden of paying for plaintiff's attorney's fees and costs. However, the City defendants are solely responsible for any fees and costs incurred prior to April 3, 1996, the date on which plaintiff's attorneys began working on the appeal to the State Review Officer after the City defendants denied plaintiff's requested relief.

Therefore, the City defendants are responsible for attorney's fees in the amount of $97,761.20[4] and costs in the amount of $2,117.38,[5] for a total of $99,878.58. The State defendants are responsible for attorney's fees in the amount of $45,165.00[6] and costs in the amount of $1,681.84,[7] for a total of $46,846.84.

SO ORDERED.

4. The court reached this figure by adding $52,596.20 (which is 100% of the fees incurred prior to April 3, 1996 minus the 20% reduction), and $45,165.00 (which is half of the fees incurred after April 3, 1996, after the 20% reduction).

5. The court reached this figure by adding $435.54 (which is 100% of the costs incurred prior to April 3, 1996 minus the 20% reduction) and $1,681.84 (which is half of the costs incurred after April 3, 1996, after the 20% reduction).

6. This is half of the fees incurred after April 3, 1996, after the 20% reduction.

7. This is half of the costs incurred after April 3, 1996, after the 20% reduction.