BD, et al., Plaintiffs,

v.

Barbara A. DEBUONO, et al., Defendants.

MM, et al., Plaintiffs,

v.

Susanne D. Kaplan, et al., Defendants.

"EE", et al., Plaintiffs,

v.

Barbara A. DeBuono, et al., Defendants.

"PP", et al., Plaintiffs,

v.

Barbara A. DeBuono, et al., Defendants.

Nos. 98 CIV. 0910(CM), 98 CIV. 0972(CM), 99 CIV. 10596(CM), 99 CIV. 10597(CM).

United States District Court, S.D. New York.

Nov. 14, 2001.

Denise T. DiPersio, Stuart M. Grant, Jay W. Eisenhofer, Grant & Eisenhofer, P.A., Wilmington, DE, Marjorie E. Berman, Krantz & Berman, L.L.P., New York City, Michelle Rago, Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, NY, Mark J. Krum, Mary J. Krum, Philadelphia, PA, Kyle C. McGovern, Westchester County Attorney's Office, White Plains, NY, for plaintiffs.

Thomas R. Sofield, State of New York, Office of Attorney General, New York City, Jeffrey S. Dantowitz, Michael D. Hess Corp., Counsel of the City of New York, New York City, for defendants.

Alan D. Scheinkman, Westchester County Attorney, White Plains, NY, for cross-claimants.

Thomas R. Sofield, State of New York, Office of Attorney General, New York City, for cross-defendants.

## MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

MCMAHON, District Judge.

Plaintiffs are infant children diagnosed with autism or pervasive developmental disorder, and their parents. Plaintiffs sued New York City, Westchester County, the Westchester County Department of Health and certain of its ranking officials (collectively, the "County Defendants"), as well as various officials of the New York State Department of Health (collectively, the "State Defendants"), pursuant to § 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of due process rights granted to them by the Individuals with Disabilities Education Act, 20 U.S.C. § 1431, *et seq.* ("IDEA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.,* New York's Public Health Law § 2540, *et seq.,* and the Fifth and Fourteenth Amendments to the United States Constitution. This Court approved a comprehensive settlement of the case in an oral opinion from the bench on October 19, 2001, and issued a written opinion approving the infant compromise orders on the same day.

Before the Court is plaintiff's motion for attorneys' fees and disbursements in connection with the settlement of this action. In a partial opinion on the record, I have already outlined for the parties the principles I will follow in computing the fee award. I also made a partial award. I write principally to resolve two remaining legal issues—(1) whether expert fees should be awarded to the plaintiffs, and (2) whether Westlaw fees are reimbursable—and also to enter on the record my final calculation of the fee award. The parties should read the last section of this opinion in conjunction with my oral opinion of October 19, 2001.

## I. *Outstanding Issues Relating to the Fee Award*

### A. Reimbursement of Expert Fees

Plaintiff seeks $345,043.44 in reimbursement for amounts expended for "experts"

utilized in conjunction with this litigation. The fees sought are as follows:

DOAR Associates
  (Litigation Consultants): $135,475.00
Dr. Richard M. Foxx: $135,832.67
Dr. Gina Green: $ 65,517.67
Dr. Jerome M. Staller: $ 8,218.00

### (1) The DOAR Fees are Reimbursable, Not as Expert Fees, But as Attorneys' Fees

■ Plaintiffs will be reimbursed for the entire amount (less 10%) expended on the services of DOAR Communications, the trial preparation consultant. These specialists assisted plaintiffs' attorneys with pretrial preparation and jury selection, provided technological assistance, and worked on mock trials. Plaintiffs' counsel used the services of DOAR to prepare their case for presentation to a jury.

Litigation consultants (also known as litigation support specialists) are trained in various aspects of courtroom practice and procedure. They are consulted by litigators to hone their trial skills in the context of a particular case. It seems to this Court that litigation consultants, used in the manner that plaintiffs' counsel used them here, are the equivalent of additional attorneys or legal para-professionals. The services they provide are not those of an expert witness, which has been the traditional purview of "expert fees." DOAR provided neither substantive testimony nor information relating to the underlying dispute. Therefore, even though they are expert at what they do, they do not fall within the rubric of "experts" as that term traditionally has been used.

If plaintiffs' counsel had organized mock trials themselves, or done their own jury consulting research, the hourly rates they charged for those services would be reimbursable as part of an attorneys' fee award. The fact that counsel chose to engage the services of an independent contractor to perform those same services, rather than assign the same work to employees, does not alter the nature of the services rendered. DOAR's litigation consulting services fall properly under the rubric of attorneys' fees and are a reimbursable expense in a litigation of this magnitude.

Plaintiffs request $135,475.00 for the trial preparation consultant fees. I am reducing that amount by 10%, consistent with my announced decision to reduce attorneys' fees by 10% across the board. Therefore, plaintiffs are awarded $121,927.50, to be paid entirely by the County, since the costs were incurred during Period 3.

### (2) Fees of Medical Experts

Plaintiffs retained three experts to opine on issues pertinent to this case and to give testimony at trial. Dr. Richard Foxx, of Help Services, Inc., is a Professor of Psychology at the University of Harrisburg and an Adjunct Professor of Pediatrics at the College of Medicine of the University of Pennsylvania. He issued two reports concluding that the plaintiff children received insufficient applied behavior analysis ("ABA") therapy, and that their long-term prognoses were worse than they would have been had they received this therapy. Dr. Green is the Director of Research for the New England Center for Children, a Professor of Psychiatry and Pediatrics at the University of Massachusetts Medical School, a Clinical Assistant Professor at the College of Pharmacy and Health Sciences at Northeastern University, and an Associate Scientist in the Behavioral Sciences Division of the E.K. Shriver Center for Mental Retardation, Inc. She issued two reports concerning the use of ABA therapy in the treatment of autism, challenging the reasonableness of imposing a limit on the number of hours per week that children with autism are

given therapy. Dr. Staller, of the Center for Forensic Economic Studies, issued one report calculating the economic loss to plaintiffs from receiving insufficient ABA therapy. All three of these experts gave depositions regarding their reports. Plaintiffs seek $135,832.67 in reimbursement for fees paid to Dr. Foxx, $65,517.67 for fees paid to Dr. Green, and $8,218.00 for fees paid to Dr. Staller.

There is no question that plaintiffs needed to retain experts to pursue this case, that the experts retained are highly qualified in their fields, and that their testimony would have been reasonably necessary had this matter gone to trial. It is also undisputed that plaintiffs' counsel have paid the experts. The question is whether I am permitted to reimburse them for that payment pursuant to 42 U.S.C. § 1988 (the statute on which plaintiffs rely) or otherwise.

■ Fees charged by expert witnesses are not considered "taxable costs" under the cost statute, 28 U.S.C. § 1920, which provides that costs include the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Witness fees paid to experts, like those paid to all witnesses, are authorized by § 1920(3), but are limited by 28 U.S.C. § 1821(b) as follows: "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance...." Only that amount is recoverable as a cost. See West Virginia Univ. Hosps. v. Casey, 499 U.S. 83, 86, 111 S.Ct. 1138, 1140, 113 L.Ed.2d 68 (1991).

In the wake of the substantial civil rights litigations of the 1970s and 1980s, which spawned huge plaintiffs' expert fees, courts began to look for a way around this limitation. They purported to find it in 42 U.S.C. § 1988, which provided that attorney's fees were reimbursable to a prevailing plaintiff in any case brought under a civil rights statute, including 42 U.S.C. § 1983.[1] The Second Circuit's reasoning on this point was not unpersuasive—"attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir.1989) (citing Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir.1987)). Accordingly, attorney's fees should "include expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" Reichman, 818 F.2d at 283 (citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980)).

---

1. 42 U.S.C. § 1988(b) read:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 ..., or title VI of the Civil Rights Act of 1964 [42 U.S.C.A § 2000d et seq.] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The game changed, however, in 1991, when the United States Supreme Court ruled that fees for expert witness were not recoverable as part of § 1988 attorneys' fees, absent explicit statutory language to the contrary. *West Virginia Univ. Hosps.*, 499 U.S. at 86, 111 S.Ct. 1138. Immediately thereafter, as part of the Civil Rights Act of 1991 (a statute passed to overrule certain Supreme Court decisions of the preceding few years), Congress added a new subsection (c) to § 1988. It provided:

> In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

42 U.S.C. § 1988. *See also Landgraf v. USI Film Products,* 511 U.S. 244, 251, 114 S.Ct. 1483, 1490, 128 L.Ed.2d 229 (1994). At the same time Section 1988(c) was passed, Congress also added statutory language ensuring expert fees in the employment discrimination context. Congress added the following language to Title VII:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). And Congress incorporated the same remedy into the Americans with Disabilities Act, which was passed into law in 1991:

The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a).

■ Unfortunately for plaintiffs in this case, and for § 1983 plaintiffs generally, these new laws did not authorize recovery of prevailing plaintiffs' expert fees in all civil rights cases. It only authorized them in various discrimination cases.[2] By neither including § 1983 cases in the ambit of the new § 1988(c) nor passing some other provision that provided for recovery of expert's fees in such matters, Congress declined to overturn *West Virginia Hospitals* in due process cases and made a conscious decision not to tax municipalities with the burden of paying expert fees in every § 1983 case.

This case, of course, is not a discrimination case. It is a § 1983 case, in which plaintiffs, seeking to vindicate rights guaranteed by the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* allege various due process and equal protection violations.

I recognize that a number of my brothers and sisters on district courts here and elsewhere have continued to award expert fees as part of attorneys' fees pursuant to § 1988, relying on the Second Circuit's reasoning in *United States Football*

---

**2.** The new legislation did not even cover all forms of discrimination. The Civil Rights Act of 1991 did not address the recovery of expert fees under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* or the Fair Labor Standards Act, 29 USC § 201 *et seq.*

Therefore, the *West Virginia University Hospitals* rule still governs ADEA and FLSA cases. *Employment Discrimination Law* 1181–82, ABA Section of Labor and Employment Law 3d Ed. (Barbara Lindemann & Paul Grossman eds., 1997).

*League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989). *See e.g., Hutchinson v. McCabee,* No. 95 Civ. 5449(JFK), 2001 WL 930842, at *5–6 (S.D.N.Y. Aug.15, 2001) (awarding expert fees in a prisoner's rights case arising under § 1983); *Marisol A. v. Giuliani,* 111 F.Supp.2d 381, 392 (S.D.N.Y.2000) (awarding expert fees in a § 1983 case arising out of substantive due process violations by the city's child welfare system). However, it is impossible for me to read *West Virginia University Hospitals* and § 1988(c) in tandem and not conclude that § 1988 provides no basis for an award of fees paid to Drs. Foxx, Green, and Staller.

In, this particular case, however, all is not lost for plaintiffs. IDEA has its own separate and independent provision awarding attorneys' fees, 20 U.S.C. § 1415(i)(3)(B). I believe that I can award expert fees to plaintiffs pursuant to this law.

Courts have disagreed about whether expert fees are recoverable under IDEA. 20 U.S.C. § 1400 *et seq.. Compare Straube v. Florida Union Free School Dist.,* 801 F.Supp. 1164, 1182 n. 17 (S.D.N.Y.1992) (noting that expert fees are recoverable by a prevailing party); *Mr. J. v. Bd. of Educ.,* 98 F.Supp.2d 226, 242–43 (D.Conn.2000) (awarding expert fees to the prevailing party, stating that "any other result would be unjust"); *P.G. v. Brick Township Bd. of Educ.,* 124 F.Supp.2d 251, 266–67 (D.N.J.2000) (recognizing disagreement, but deciding to grant expert fees); *Woodside v. Sch. Dist. Of Philadelphia Bd. of Educ.,* No. Civ. A. 99–1830, 2000 WL 92096, at *5 (E.D.Pa. Jan.27, 2000) (same); *with Eirschele v. Craven County Bd. of Educ.,* 7 F.Supp.2d 655 (E.D.N.C.1998) (concluding that if Congress had intended expert fees to be recoverable under IDEA, they would have changed the language of the statute to make that clear after the

Supreme Court's decision in *West Virginia University Hospitals* ); *Shanahan v. Bd. of Educ. Of the Jamesville–DeWitt School District,* 953 F.Supp. 440 (N.D.N.Y.1997) (refusing reimbursement of expert fees because parties provided no authority for the award of expert fees in an IDEA case); *Cynthia K. v. Bd. of Educ. of Lincoln–Way High Sch. Dist. 210,* No. 95 C 7172, 1996 WL 164381, at *2 (N.D.Ill. Apr.1, 1996) (denying expert fees based on *West Virginia University Hospitals* ).

Looking at the bare language of the statute, I would have to agree with those judges who came down against an award of expert fees. Section 1415(i)(3)(B) of IDEA states that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." There is nothing in § 1415(i)(3)(B) that directly authorizes the inclusion of expert fees within an attorneys' fee award, and, Congress did not add subsection (c) type language to IDEA when it amended § 1988, or Title VII, or the ADA. 42 U.S.C. § 2000e–5(k); 42 U.S.C. § 12117(a).

However, there would appear to be a reason why Congress did not seek to remedy this "defect" in IDEA. The legislative history of IDEA specifically states that "the conferees intend that the term 'attorneys' fees as part of the costs' include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the ... case." H.R.Conf.Rep. No. 687, 99th Cong., 2d Sess. 5, *reprinted in,* 1986 U.S.Code Cong. & Admin. News 1798, 1808. Interestingly, Justice Scalia—a well-known proponent of limiting statutory construction to the plain meaning of the words used in the statute, and opponent of excessive reliance on secondary sources such as legislative history—relied on the presence of this leg-

islative history to distinguish IDEA from § 1988 in the *West Virginia University Hospitals* decision. Justice Scalia wrote, "the specification [by the conferees] would have been quite unnecessary if the ordinary meaning of the term included those elements. The statement is an apparent effort to *depart* from ordinary meaning [in the IDEA context] and to define a term of art." *West Virginia Univ. Hosps.*, 499 U.S. at 90, n. 5, 111 S.Ct. 1138.

■ *West Virginia University Hospitals* was not an IDEA case (indeed, Justice Scalia declined to incorporate the broader reading of the term "attorneys' fees" found in IDEA's legislative history into § 1988). *Id.* This case, in its most fundamental sense, *is* an IDEA case. I am persuaded, given the clear legislative history behind IDEA, that Congress intended for expert fees to be reimbursable as attorneys fees in cases brought to enforce the rights guaranteed by IDEA, even when those cases are suits for past damages rather than actions for compensatory education or injunctive relief. *Cf., Bailey v. District of Columbia*, 839 F.Supp. 888 (D.D.C.1993) (awarding expert fees and costs after analyzing the legislative history of the HCPA); *Aranow v. District of Columbia*, 791 F.Supp. 318, 318 (D.D.C.1992) (concluding that shifting expert witness fees is "consistent with Congress' purpose in enacting the HCPA"); *Field v. Haddonfield Bd. of Educ.*, 769 F.Supp. 1313, 1323 (D.N.J.1991) (awarding expert fees "as part of the costs" after reviewing the legislative history). Moreover, even though this case was not maintained as an action for compensatory education or injunctive relief (because the plaintiff children had aged out of the Early Intervention Program at issue), the settlement that was ultimately agreed to resulted in the entry of an injunction that will govern the IDEA rights of children, and responsibilities of

the municipal defendants, in future years. Thus, in the truest sense, the expert fee issue in this particular case ought of right to be governed by IDEA, not by § 1988.

Defendants concede that plaintiffs are the prevailing parties under the statute. (City Settlement Agreement ¶ 10; State Settlement Agreement ¶ 5; County Settlement ¶¶ 14–15.) The expert services provided were "necessary for the preparation of the parent or guardian's case in the action or proceeding." *Field*, 769 F.Supp. at 1323 (quoting H.R.Conf.Rep. No. 99–687 at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1808). The only issue is whether the fees requested are reasonable. 20 U.S.C. § 1415(i)(3)(B).

■ A Court may refuse to grant fee requests that are excessive or redundant. *Mr. X v. New York State Educ. Dept.*, 20 F.Supp.2d 561, 564 (S.D.N.Y.1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). I conclude that the expert fees requested by plaintiffs were excessive. Plaintiffs seek recovery of $209,568.34 for: (i) two reports by Dr. Foxx; (ii) two reports by Dr. Green (eleven pages of text in total); (iii) one report by Dr. Staller (which calculated numbers given to him by Dr. Foxx, projected over two of the plaintiffs' lifetimes); and (iv) depositions of these experts concerning these reports. (DeRight Dec., ¶¶ 57–62.) These figures are exorbitant, especially when compared to the costs of defendants' experts. Defendants spent less than $35,000 on three experts who presented four reports and gave depositions. (DeRight Dec., ¶ 64.) While I have no doubt that plaintiffs' experts enjoy outstanding credentials, that does not justify paying them six times more than defendants are paying their compatriots. Accordingly, I conclude that plaintiffs' original request of $209,568.34 in expert fees will be reduced by 50% and plaintiffs will

be reimbursed in a total amount of $104,784.17.

## B. Westlaw fees

■■■■ While there is conflicting authority regarding the compensation of computer research charges, this Court holds that Westlaw fees are not attorneys' fees, but a separate non-reimbursable taxable cost under 28 U.S.C. § 1920. *See United States ex rel. Evergreen Pipeline Constr. v. Merritt–Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996). An attorney's time spent performing computerized research is properly compensable. However, the cost of the computer service used in the research is no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Reporter and the Federal Supplement that lawyers used to use (and many still use) to find authority and research issues of law. Westlaw fees are simply an item of overhead, and as such should be built into the fees charged, rather than unbundled and reimbursed separately. *Merritt Meridian*, 95 F.3d at 173; *Sulkowska v. City of New York*, No. 99 Civ. 4228(AGS), 2001 WL 428253 (S.D.N.Y. Apr.25, 2001); *Ciraolo v. City of New York*, No. 97 Civ. 8208(RPP), 2000 WL 1521180 (S.D.N.Y. Oct.13, 2000); *Tri–Star Pictures, Inc. v. Unger*, 42 F.Supp.2d 296 (S.D.N.Y.1999); *Fink v. City of New York*, 154 F.Supp.2d 403 (E.D.N.Y.2001).

There are cases in this district that have allowed the shifting of computer research fees. *See Anderson v. City of New York*, 132 F.Supp.2d 239, 247 (S.D.N.Y.2001) ("costs for computer research ... are considered part of attorneys' fees because in theory, an attorney will complete a research assignment faster with the aid of computerized databases than without such

aides"); *Gonzalez v. Bratton*, 147 F.Supp.2d 180, 212 (S.D.N.Y.2001) (noting that "Second Circuit doctrine holds that [computerized research] expenses are recoverable in an application for attorneys' fees") (internal quotations and citations omitted); *Lawson ex rel Torres v. City of New York*, No. 99 Civ. 10393(LAP), 2000 WL 1617014, at *5 (S.D.N.Y. Oct.27, 2000) ("computer research is properly charged as an attorney's fee rather than as a separately taxable cost"); *Schaefer v. State Ins. Fund*, No. 95 Civ. 0612(JFK), 1999 WL 281342 at *5 (S.D.N.Y. Apr.14, 1999) (allowing $239.22 for Lexis–Nexis research costs). I am unpersuaded by this reasoning—especially the notion that use of Westlaw saves attorney time. Whether one reads a case from a book or a screen, the attorney's time is the compensable element—not the medium that delivers the message.

This Court believes that the *Merritt Meridian* court meant what it said when it said that the cost of an attorney's time spent doing research is properly compensable but that the cost of the research tool was not a separately reimbursable taxable cost. 95 F.3d at 173. If a firm chooses to unbundle Westlaw fees and make them a separate profit center—instead of incorporating the costs into their hourly rates— that system may work well for them in terms of paying clients, but it does not help them with fee applications under § 1988 in the post-*Merritt Meridian* world. Accordingly, plaintiff's request for $40,744.65 in Westlaw fees is denied.

## II. Final Award of Fees

I start by summarizing the findings made and conclusions reached in the October 19 oral opinion:[3]

---

**3.** At the October 19 hearing, I asked plaintiffs to provide me with calculations, broken down

by period, for paralegal time and fees, so I could make final fee awards. Plaintiff have

■ 1. There are three separate periods to consider in this case. All three groups of defendants (City, County and State) were in the case at the beginning. The City settled with plaintiffs on May 3, 1999, and ceased to be as active a litigant as the other defendants some months earlier than that date. The State settled with plaintiffs on June 4, 1999. The County defendants continued to litigate vigorously until July 27, 2001, on the eve of trial. The fees must be apportioned among the various defendant groups based primarily on their period of participation in active litigation, and secondarily (in the case of the City) on the degree of their participation. Accordingly, I find that fees should be apportioned as follows:

For Period 1 (9/7/97–5/3/99): 25% to the City, 37.5% to State, 37.5% to the County

For Period 2 (5/4/99–6/4/99): 50% to each of the State and County

For Period 3 (6/5/99–8/5/01): 100% to the County

2. Before calculating the Period 3 fees chargeable to the County, I am subtracting $9,100 for cost of effecting the State settlement, and the $1000 cost of effecting the City settlement. The State and the City should pay these fees.

3. Attorney Marc Krum, who was engaged to try this case as chief trial counsel, worked only in Period 3. Therefore, his fees should be paid entirely by the County.

4. All attorneys' hourly rates as requested are reasonable and appropriate for litigation of this magnitude in this area of the country and lawyers of this skill level.

5. To factor out duplication of effort and vague time records, I am reducing the amount requested for each legal professional (lawyer, paralegal, litigation consultant) by 10% across the board.

6. Plaintiffs achieved an extraordinary result in this litigation, for reasons stated in the oral opinion.

7. Fees are awarded as follows:

AS AGAINST THE CITY OF NEW YORK:

| | |
|---|---|
| Grant and Eisenhofer, P.A. | $ 67,367.97 |

AS AGAINST THE STATE OF NEW YORK:

| | |
|---|---|
| Grant and Eisenhofer, P.A | $137,919.39 |
| Lowey Dannenberg | $ 3,000.00 |
| Total Award: | $140,919.39 |

AS AGAINST THE COUNTY OF WESTCHESTER:

| | |
|---|---|
| Mr. Krum | $ 90,045.00 |
| Lowey Dannenberg | $ 7,000.00 |
| Grant and Eisenhofer | $745,972.14 |
| Total Award: | $843,017.14 |

8. Expenses are awarded as follows:

AS AGAINST THE CITY OF NEW YORK:

| | |
|---|---|
| Grant and Eisenhofer's Paralegal fees | $ 2,447.44 |
| Grant and Eisenhofer's Expenses | $ 3,863.90 |
| Total Award | $ 6,311.34 |

AS AGAINST THE STATE OF NEW YORK:

| | |
|---|---|
| Grant and Eisenhofer's Paralegal fees | $ 4,429.31 |
| Grant and Eisenhofer's Expenses | $ 10,963.00 |
| Total Award | $ 15,392.31 |

AS AGAINST THE COUNTY OF WESTCHESTER:

| | |
|---|---|
| Grant and Eisenhofer's Paralegal fees | $ 27,745.83 |
| Grant and Eisenhofer's Expenses | $100,241.47 |
| Grant and Eisenhofer's Expert Witness Expenses | $104,784.17 |
| Grant and Eisenhofer for DOAR Expenses | $121,927.50 |
| Mr. Krum's Expenses | $ 1,196.48 |
| Total Award | $355,895.45 |

9. Plaintiff shall have judgment against the responsible defendant for the fees and expenses awarded above.

done far more than that—they have sent me documentation of additional time charges, and supporting documentation for the work done by their experts (which was conspicuously absent from their original motion). I decline to consider any of that material.

Thus, the fee awards announced in this decision are based on plaintiffs' original request for attorneys' fees and expert fees. I decline to award plaintiffs any reimbursement for additional amounts requested in their fax to the Court on October 26, 2001.

10. The Clerk of the Court is directed to close the case.

This constitutes the decision and order of the Court