**S.W. and M.M., on Behalf of N.W., Plaintiffs,**

v.

**BOARD OF EDUCATION OF THE CITY OF NEW YORK (DISTRICT TWO), Defendant.**

**No. 02 Civ. 4290(SAS).**

United States District Court, S.D. New York.

Feb. 26, 2003.

Gary M. Mayerson, Mayerson & Associates, New York City, for Plaintiffs.

Martin Bowe, Assistant Corporation Counsel, Office of Corporation Counsel of the City of New York, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. BACKGROUND

On October 2, 1998, plaintiffs S.W. and M.M. requested a due process hearing, on behalf of their son, N.W., to challenge the program[1] recommended for N.W. by District Two of the Board of Education of the City of New York ("the Board"). Evidentiary hearings were held on November 12, 1998, December 10, 1998, December 12, 1998, December 15, 1998, and January 25, 1999 and post-hearing briefs were submitted. By decision dated February 18, 1999 and amended March 23, 1999, Hearing Officer Jean Marie Brescia rendered an award in favor of plaintiffs, finding that the Board had failed to provide N.W. with an appropriate educational program. *See* Hearing Officer's Amended Findings of Fact and Decision ("H.O. Decision"), Case No. 34843, Ex. 1 to Complaint ("Compl."). The Board never appealed from the underlying decision, which became final and non-appealable on or about April 3, 1999.

Plaintiffs now bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B), to recover the attorneys' fees and costs incurred in connection with the administrative proceedings and in making the instant

---

1. According to private evaluators, N.W., who has a serious autism spectrum disorder, needed greater educational support and interventions than he was receiving at his center-based preschool program—*i.e.,* an extended-day program consisting of intensive one-to-one Applied Behavior Analysis ("ABA") interventions and speech and language therapy. *See* Affidavit of Gary S. Mayerson, counsel for plaintiffs ("Mayerson Aff."), ¶¶ 7, 8.

fee application. Plaintiffs claim that they are entitled to $11,082.68 in attorneys' fees and related costs and expenses for the underlying proceedings[2] and $13,129.25 for the instant fee application.

## II. LEGAL STANDARD

Under the IDEA, like other civil rights statutes, the court may award reasonable attorneys' fees and costs to "the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). The statute provides for certain reductions, including, for example, where "the time spent and legal services furnished were excessive." *Id.* § 1415(i)(3)(F)(iii).

 "Although the amount of attorneys' fees is largely within the discretion of the district court, the Second Circuit has established a procedure to calculate such awards." *Mr. X v. New York State Educ. Dep't,* 20 F.Supp.2d 561, 563 (S.D.N.Y.1998). Under the "lodestar" approach, fees are determined by "multiplying 'the number of hours reasonably expended on the litigation … by a reasonable hourly rate.'" *See LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir.1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The result of this calculation is presumed to be the reasonable fee. *See LeBlanc,* 143 F.3d at 764 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). The party seeking the award has the burden of submitting

evidence supporting the hours worked and rates charged. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. If the documentation is inadequate or it reflects excessive or redundant time, the court may reduce the award accordingly. *See id.* at 433–34, 103 S.Ct. 1933.

## III. DISCUSSION

The Board does not challenge plaintiffs' entitlement to fees for the administrative hearing, but argues that the hourly rates demanded by plaintiffs exceed the prevailing rate for the "kind and quality" of services provided, *see* Defendant's Memorandum of Law in Opposition to Plaintiffs' Application for Attorneys' Fees ("Def.Mem.") at 6–16, and that counsel's time should be reduced because of inadequate record-keeping, *see id.* at 17–20. The Board does, however, challenge plaintiffs' entitlement to compensation for the instant fee application, arguing that plaintiffs' counsel has failed to submit sufficient contemporaneous records to support plaintiffs' claim. *See* Def. Mem. at 20–23.

I will first address the reasonableness of plaintiffs' attorneys' proposed hourly rates and the number of hours expended. I will next consider whether any reductions to the lodestar amount are warranted. Finally, after determining the fee award, I will address the request for costs. This four-step analysis will be applied both to the fees and costs requested for the underlying administrative proceedings and the fees and costs incurred in bringing this action.

### A. The Underlying Proceedings

#### 1. Hourly Rate

 "In determining the reasonable hourly rate to be applied, the Court should

---

**2.** The total amount billed to plaintiffs for the administrative proceedings totals $10,-952.63—not $11,082.68. *See* Invoices No. 15709, 15331, and 15498 ("Invoices"), Ex. 3 to Mayerson Aff.

look to market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Marisol A. v. Giuliani*, 111 F.Supp.2d 381, 386 (S.D.N.Y.2000) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998)). The relevant community to which the court should look is the district in which the case was brought. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987). In the Southern District of New York, the prevailing rates are those of Manhattan attorneys. *See Knoeffler v. Town of Mamakating*, 126 F.Supp.2d 305, 313 (S.D.N.Y. 2000). The rates used by the Court should be "'current rather than historic hourly rates.'" *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

■ For the administrative proceedings, Mayerson billed at the rate of $350 per hour. *See* Graubard, Mollen, Dannett & Horowitz Billing Memoranda, Ex. 3 to Mayerson Aff. ("Billing Memoranda").[3] Mayerson has been practicing law for twenty-three years. *See* Mayerson Aff. ¶ 3. Until 1996, virtually all of his experience was as a commercial litigator. *See id.* ¶ 4. Since then, he has developed a practice in education law, focusing almost exclusively on the representation of children with autism spectrum disorders. *See id.* ¶¶ 4, 5, 15.

Mayerson's rate is consistent with the rates charged by other experienced New York City lawyers who represent parents and children in special education matters. *See M.S. v. New York City Bd. of Educ.*, Nos. 01 Civ. 4015, 01 Civ. 10871, 01 Civ. 10872, 2002 WL 31556385, at *4, n. 2 (S.D.N.Y. Nov.18, 2002) (noting that Roger Maldonado, a partner in the law firm of Balber, Pickard, Battistoni, Maldonado & Van Der Tuin, P.C., charges his clients $325 per hour for representation in special education cases; John C. Gray, Project Director of South Brooklyn Legal Services since 1970, bills at a rate of $350 per hour in special education cases; and Charles D. Maurer, a solo practitioner with over thirty years experience, charges $350 per hour in IDEA cases).

Moreover, several courts in this district have approved rates of $350–375 per hour for lawyers with Mayerson's level of experience. *See, e.g., id.* at *5 (approving a rate of $350 per hour for representation at administrative hearings brought under IDEA charged by attorneys with more than twenty years of experience); *Mr. X*, 20 F.Supp.2d at 563–64 (approving a rate of $350 to $375 per hour for a "very experienced litigator" in an IDEA action); *Marisol A.*, 111 F.Supp.2d at 386 (finding, based upon extensive research on fee awards in civil rights cases, that $350 per hour is a "reasonable rate" for attorneys with more than fifteen years of experience).[4] In fact, one court in this district

---

3. In Mayerson's Affidavit, he states that his standard hourly rate at the time of the underlying due process hearing was $365 per hour. *See* Mayerson Aff. ¶ 17. However, the Billing Memoranda attached to Mayerson's Affidavit illustrate that plaintiffs were billed at the rate of $350 per hour for Mayerson's services in connection with the administrative hearing. *See* Billing Memoranda.

4. The Board argues that the Court should take into account Mayerson's inexperience in 1998 in representing families in IDEA admin-

istrative hearings. *See* Def. Mem. at 12. The fact that Mayerson was not the "expert autism attorney that he claims to be today" when he provided the legal services at issue here, Def. Mem. at 11, is immaterial, as two courts in this district have already held. *See M.S.*, 2002 WL 31556385, at *5 (rejecting argument that attorneys' rates should be determined by lawyers' experience in the particular field in question and not their experience overall); *Mr. X*, 20 F.Supp.2d at 564 (approving requested fee despite attorney's lack of experi-

has already found Mayerson's rates to be reasonable. *See R.E. and K.E. v. New York City Bd. of Educ., District 2,* No. 02 Civ. 1067, 2003 WL 42017, at \*2 (S.D.N.Y. Jan.6, 2003) (Chin, J.). In light of Mayerson's experience and the rates charged by other attorneys with comparable credentials in the field, $350 per hour is a reasonable rate.

The Board argues that the Court should use a rate in the range of $125–190 per hour because the Board has paid such rates to experienced education lawyers in IDEA cases. *See* Def. Mem. at 12; Declaration of Everett N. Hughes, former attorney in the Office of Legal Service for the Board ("Hughes Dec.") ¶ 10. These rates, however, were paid in negotiated cases, where the issue of attorneys' fees was settled. *See* List of Rates Paid to Attorneys in Settled Cases, Ex. D to Hughes Dec. ("Board's Fee List"). In cases that do not settle, the attorneys on the Board's list charge significantly more money. *See M.S.,* 2002 WL 31556385, at \*5 (acknowledging that the rates the Board agrees to pay plaintiffs' attorneys "may be well below the amount actually charged by those attorneys"). For example, the Board asserts that an attorney named Regina Skyer is paid $190 per hour. *See* Board's Fee List. However, plaintiffs have submitted a letter from Skyer stating that her hourly billable rate is $350, and that any reduction from that rate "is as a result of settlement reached with the New York City Board of Education." 9/11/02 Letter from Skyer to Mayerson, Ex. A to Reply Affidavit of Gary S. Mayerson in Further Support of Plaintiffs' Fee Application ("Mayerson Rep. Aff.").

■ The Board additionally contends that the rate requested by plaintiffs is unreasonable for the "kind" of services

provided, arguing that fee awards for IDEA administrative proceedings should be lower than fee awards for "full-blown trials or litigation in courts" because the former are a "far less demanding form of legal representation." Def. Mem. at 8–9. There is no support in the law for such a distinction, as one court in this district has already recognized. *See M.S.,* 2002 WL 31556385, at \*5 n. 5 (rejecting defendant's contention that "awards under IDEA should be at a lower rate than that prevailing in the community for other litigation work since IDEA representation at an impartial hearing is not particularly complex").

Moreover, such a distinction runs contrary to public policy. If attorneys are compensated at a lower rate for administrative hearings, fewer attorneys will be willing to provide such representation, thereby rendering the right to representation at an IDEA hearing meaningless. In an area where there is already a dearth of lawyers to provide critically needed legal assistance to parents and children, such a result would undermine the very purpose of the IDEA—to safeguard the educational rights of children with disabilities.

**2. Number of Hours**

■ "To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work that are documented by the attorney's records." *See Lawson v. City of New York,* No. 99 Civ. 10393, 2000 WL 1617014, at \*2 (S.D.N.Y. Oct.27, 2000) (citation omitted). The court must then look to "its own familiarity with the case and its experience generally . . . Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is commit-

---

ence in special education law because attorney's extensive experience in other areas of

practice "undoubtedly helped him learn about the IDEA quickly and effectively").

ted to the discretion of the district court." *Id.* (citations omitted).

■ The documentation submitted by plaintiffs suggests that Mayerson spent a total of 30.2 hours in connection with the administrative proceedings,[5] reviewing and analyzing N.W.'s school records, exchanging pre-hearing disclosures, preparing witnesses and documentary evidence, attending the hearing, and submitting a post-hearing brief. *See* Mayerson Aff. ¶ 9.

The amount of time spent on these activities is reasonable. The hearing lasted approximately eleven hours and took place on four different days. *See* Excerpts of Hearing Transcripts, Ex. 1 to Declaration of Martin Bowe, counsel for defendant ("Bowe Dec.") (indicating the time the hearing began and was adjourned on each of the four days). Plaintiffs' evidentiary presentation involved approximately three dozen exhibits and the testimony of four fact witnesses and one expert witness. *See* H.O. Decision at 5–13 (summarizing the evidence presented on behalf of plaintiffs).

Considering the extent of the work required to adequately prepare and effectively present plaintiffs' case to the hearing officer, twenty hours is not an excessive amount of time for Mayerson to have spent on all the pre- and post-hearing work. On the contrary, as the Board concedes, "relatively little preparation" was done for the hearing, *see* Def. Mem. at 13, most likely because of Mayerson's experience and familiarity with the subject matter.

### 3. Adjustments

■ Any attorney seeking fees must keep "accurate and current records

of work done and time spent." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983) (internal quotation marks and citation omitted). The time records must be contemporaneous and detailed, "specify[ing] for each attorney the date, the hours expended, and the nature of the work done." *Id.* at 1147–48; *see also Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 408 (2d Cir.1987). "Time records should enable the court to determine the nature of the tasks performed and the amount of time reasonably required to perform those tasks." *Mr. X,* 20 F.Supp.2d at 564. Where documentation of hours is vague or incomplete, the court may reduce the award. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987); *Carey,* 711 F.2d at 1148. Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," courts apply across-the-board percentage cuts "as a practical means of trimming fat from a fee application." *Carey,* 711 F.2d at 1146.

The Board argues that the lodestar amount should be reduced because the records submitted by plaintiffs are not contemporaneous and the bills are insufficiently detailed. *See* Def. Mem. at 17–20. In support of their fee application, plaintiffs submitted three invoices dated December 15, 1998, January 27, 1999, and March 16, 1999 that reflect the total fees and disbursements charged to them. *See* Invoices. In addition, plaintiffs submitted Billing Memoranda that list, for each attorney, the date, time, rate, value, and

---

**5.** Surprisingly, nowhere in plaintiffs' papers does Mayerson provide the total number of hours spent in connection with the administrative hearing. The Court calculated the to-tal number of hours by dividing the amount billed for Mayerson's legal fees by his hourly rate.

nature of the work done. *See* Billing Memoranda. There is no evidence to suggest that these computerized records were not contemporaneous. Some of the records do, however, lack sufficient detail.

 The Billing Memoranda do not include a breakdown of the $3,139.00 in fees charged in Invoice No. 15709, dated March 16, 1999. Thus, it is impossible for the Court to ascertain how those approximately nine hours were spent. Because the reasonableness of the time spent depends on the nature of the task, these entries lack the requisite specificity. A 10% reduction on the $3,139.00 is therefore warranted. *See United States Football League v. National Football League,* 887 F.2d 408 (2d Cir.1989) (affirming reduction of fee by 10% for vague entries).

The lodestar amount for the administrative proceedings is $10,570.[6] Reducing that amount by $313.90 (10% of $3,139.00), plaintiffs are entitled to $10,256.10 in attorneys' fees.

#### 4. Disbursements

Plaintiffs request $408.63 to cover the costs of photocopying, faxing, word processing, travel, and meals. *See* Billing Memoranda. This amount is reasonable. Thus, a total of $10,664.73 is awarded to plaintiffs to cover the fees and costs for the administrative hearing.

### B. The Fee Application

#### 1. Hourly Rate

The work on the fee application was performed by Mayerson, an associate, and a paralegal. By the time the fee application was made, which was almost four years after the administrative hearing, Mayerson had raised his standard hourly rate to $375 per hour and become the expert in autism that he now purports to be.[7] For the reasons stated above, Mayerson's rate of $375 is likewise reasonable.

 The associate, Oren, who Mayerson claims has special expertise in autism matters, was billed at a rate of $95 per hour in 2001 and $225 per hour in 2002. *See* Mayerson Aff. ¶ 17; Slip Listings Nos. 564 and 923, Ex. 4 to Mayerson Aff. The Board contends that the latter of these two rates is excessive for a junior level associate and should be reduced. *See* Def. Mem. at 21–22.

Nowhere in plaintiffs' papers is Oren's level of experience stated. Because plaintiffs do not dispute the Board's contention that Oren has not yet been admitted to the Bar, *see* Def. Mem. at 21, the Court will assume that Oren has less than three years of experience. Given Oren's lack of experience, $225 per hour is an unreasonable rate and should be reduced to $150 per hour. *See Marisol A.,* 111 F.Supp.2d at 386 (finding that "a reasonable rate scale is ... $230–250 for attorneys with seven to nine years of experience, $180–200 for attorneys with four to six years of experience, and $130–150 for attorneys with one to three years of experience.").

 Plaintiffs request $90 per hour for the work of a paralegal. Paralegals typically are billed at $75 per hour, unless they

---

**6.** This amount was calculated by multiplying 30.2 hours of Mayerson's time by his rate of $350 per hour.

**7.** To date, Mayerson has represented *"hundreds* of children and adolescents in approximately 24 states," made numerous presentations at major universities and hospitals concerning the educational rights of children and adolescents with autism spectrum disorders, and testified before the House Committee on Government Reform in connection with the re-authorization of IDEA. *See* Mayerson Aff. ¶¶ 15, 16 (emphasis in original).

have significant experience. *See, e.g., Marisol A.,* 111 F.Supp.2d at 388 (holding that, in the absence of evidence demonstrating a high level of experience, an hourly rate of $75 per hour is reasonable for paralegal services); *Williams v. New York City Hous. Auth.,* 975 F.Supp. 317, 323 (S.D.N.Y.1997) (approving an hourly rate of $75 per hour for paralegals in a civil rights action); *Wilder v. Bernstein,* 975 F.Supp. 276, 282 (S.D.N.Y.1997) (acknowledging that the prevailing rate for paralegals in civil rights cases in 1997 was between $60–75 per hour). Because plaintiffs have provided no information regarding the level of experience of the paralegal that assisted with the fee application, an hourly rate of $75 is appropriate.

### 2. Number of Hours

■ The documentation submitted by plaintiffs reflects that plaintiffs' counsel spent a total of 15.2 hours [8] on the instant fee application, broken down as follows: 6.8 hours spent by Mayerson, 7.9 hours spent by Oren, and .5 hours spent by a paralegal. The work on the fee application included a complaint, affidavit, and memorandum of law; an initial case conference; a settlement conference with the magistrate judge; correspondence and telephone conferences with the Court; correspondence and telephone conferences with opposing counsel; and a conference with the clients. *See* Slip Listings. The Board argues that this amount of time is excessive, considering plaintiffs' counsel "recycled" the papers they had filed in the *R.E.* case. *See* Def. Mem. at 22–23; Notice of Motion and Mayerson Aff. in *R.E.,* Ex. 2 to Bowe Dec.; Memorandum of Law in *R.E.,* Ex. 3

to Bowe Dec. Although the papers filed in this action are almost identical to those filed in *R.E.,* 15 hours is not excessive to litigate a matter in federal court.

### 3. Adjustments

■ The Board argues that the court should reject plaintiffs' fee application because plaintiffs have failed to provide contemporaneous time or billing records to support their claim. *See* Def. Mem. at 20 (noting that plaintiffs submitted only a "Slip Listing" printout, with no accompanying bills for the alleged work). There is no evidence to suggest that because plaintiffs' counsel entered their time into a computerized billing system rather than on individual time sheets, it was not contemporaneous.

The Board additionally argues that the entries are plagued by the same lack of specificity as the entries regarding the underlying hearing. *See* Def. Mem. at 20–21. However, the only example provided by the Board—an entry that describes the activity billed as "case conference related"—has already been deleted from the bill. *See* supra n. 8. The entries in the Slip Listings are sufficiently descriptive of the work performed. *See, e.g.,* Slip Listing, Nos. 564 and 6513, Ex. 4 to Mayerson Aff. (describing the activity billed as "legal research on attorneys fees for autism" and "prepare federal complaint for atty fees"); Slip Listing, Nos. 8223 and 7899, Ex. 5 to Mayerson Aff. (describing the activities billed as "draft letter to Judge re: settlement options" and "tc w/client re: federal case appearance for mediation"). Thus, there is no basis upon which to deny or reduce the lodestar amount, which is $3,780.[9]

---

**8.** The bill submitted by plaintiffs includes an additional 34.59 hours billed by an associate named Thieverage at $225 per hour (totaling $7,782.75), which plaintiffs admit was an error and should be deleted. *See* Plaintiffs'

Reply Memorandum of Law in Further Support of Plaintiffs' (Statutory) Attorneys' Fee Application ("Pl.Rep.Mem.") at 4.

**9.** This amount was calculated by multiplying 6.8 hours of Mayerson's time by his rate of

#### 4. Disbursements

Plaintiffs request $218.15 to cover disbursements for photocopying, Federal Express, and filing fees. *See* Slip Listing Nos. 7311, 7280, 7398, 7297, Ex. 4 to Mayerson Aff.; Slip Listing No. 7750, Ex. 5 to Mayerson Aff. This amount is reasonable. Thus, a total of $3998.15 is awarded to plaintiffs to cover the fees and costs for the instant fee application.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' application for attorneys' fees and costs is granted in the amount of $10,664.73 for the underlying administrative proceeding and $3,998.15 for the instant fee application, for a total award of $14,662.88. The Clerk of the Court shall enter judgment accordingly and close this case.

$375 per hour, 7.9 hours of Oren's time by his rate of $150 per hour, and .5 of the paralegal's time by her rate of $75 per hour, and then adding the products together.